IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | NO. 3:21-cr-00069 |
| ) | |
| v. ) | JUDGE RICHARDSON |
| ) | |
| JOSHUA HALLMON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Rule 29 Motion for Judgment of Acquittal (Doc No. 205, "Motion"), to which the Government responded in opposition (Doc. No. 214, "Response"). In its four pages, the Motion challenges Defendant's convictions on Counts Two, Four, Seven and Twelve, each of which charged a violation of 18 U.S.C. §§ 924(c)(1)(A)[1] and 2 (collectively, "the § 924(c) counts").[2] Specifically, Defendant takes issue with the jury instructions, the jury verdict form, and the jury's special findings holding Defendant accountable for the brandishing of a firearm in connection with Counts Two and Four, and for the discharging of a firearm in connection with counts Seven and Twelve. For the reasons discussed below, Defendant's motion will be denied.

---

[1] For context, § 924(c)(1)(A) provides, in relevant part, that anyone who "uses or carries a firearm" in relation to a "crime of violence" shall:

   (i) be sentenced to a term of imprisonment of not less than 5 years;
   (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
   (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

[2] Defendant's Motion and the Government's response do not provide citations to the trial record, as the trial transcripts have not yet been requested by either Defendant or the Government. Therefore, the Court has relied upon its memory and notes taken during the trial to rule on this motion. Additionally, it is noted that Defendant's Motion cites to only one case, *Alleyne v. United States*, 570 U.S. 99 (2013).

**RELEVANT BACKGROUND**

### I. Procedural History

Joshua Hallmon ("Defendant"), Charles Melvin Walker ("Walker"), and Walter Lee Williams ("Williams") were charged in a 13-count Indictment filed in this Court on May 3, 2021. (Doc. No. 25). The Indictment stemmed from two gas station/convenience store robberies—one on July 6, 2020 ("Twice Daily Robbery") and one on July 23, 2020 ("Mapco Robbery") (Counts One and Two, and Three and Four, respectively); two carjackings and kidnappings—one on July 26, 2020 ("B.A. kidnapping") (Counts Five through Seven) and another on July 27, 2020 ("C.M. kidnapping") (Counts Ten through Twelve); and an attempted carjacking on July 26, 2020 ("J.S. carjacking") (Counts Eight and Nine).[3] On July 14, 2023, the Government filed a motion to dismiss Count Nine of the Indictment in light of the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022), (Doc. No. 125); the Court granted the motion on July 17, 2023, (Doc. No. 126) thus leaving 12 counts to be resolved.

Williams and Walker pled guilty pursuant to plea agreements with the Government (on September 14, 2021, and September 24, 2021, respectively), (*See* Doc. Nos. 45, 50), but Defendant elected to proceed to trial. Trial on the remaining 12 counts began on August 7, 2023. At the close of the Government's proof, Defendant made an oral motion for judgment of acquittal. To the Court's recollection, Defendant moved for a judgment of acquittal on 11 of the 12 remaining counts (at that time, Count Thirteen was not included in Defendant's motion). After reviewing the evidence in a count-by-count fashion, the Court found that the evidence was sufficient for a reasonable jury to find Defendant guilty and denied the motion. After deliberations, the jury found

---

[3] Defendant also was charged in (and ultimately convicted on) Count Thirteen, which charged Defendant with possession of a firearm subsequent to a felony conviction in violation of 18 U.S.C. § 922(g)(1).

Defendant guilty on all 12 remaining counts. (Doc. No. 164). The jury was discharged, and Defendant renewed his Rule 29 motion for judgment of acquittal. This time, Defendant focused on those § 924(c) counts of conviction on which Defendant was (and must have been) convicted under an aiding-and-abetting theory—i.e., counts based on incidents as to which the evidence showed he never personally used or carried (let alone brandished or discharged) a firearm. The Court denied the motion, but with the proviso that Defendant could offer additional briefing that addressed whether *Alleyne* requires the aiding-and-abetting theory to cover *brandishing* and *discharging*—rather than just the using or carrying—in order for Defendant to be subject to the increased mandatory minimums associated with brandishing and discharging (as opposed to mere using and carrying). At that time, the Court left open the question as to whether there was sufficient evidence to support an aiding-and-abetting theory as to the discharge of the firearm in Count Twelve.

## II. Evidence at Trial

1. <u>Count Two (Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence—Twice Daily Robbery)</u>

Count Two charged that on or about July 6, 2020, Defendant, Walker, and Williams, knowingly used, carried, and brandished a firearm, during and in relation to a crime of violence (the Twice Daily Robbery as charged in Count One), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. (Doc. No. 25 at 1-2). Evidence at trial established that Defendant, Walker and Williams (collectively, "") entered the Twice Daily convenience store in the early morning hours of July 6, 2020, wearing masks. After briefly browsing the store, Defendants approached the counter and the store clerk. Walker brandished a firearm and told the clerk to open the register. The store clerk complied, and Defendants took money and tobacco items from the store. Walker testified that he,

Defendant, and Williams planned the robbery earlier in the day and had planned for Walker to have a firearm during the robbery.

> 2. <u>Count Four (Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence—Mapco Robbery)</u>

Count Four charged that on or about July 23, 2020, Defendant, Walker, and Williams, knowingly used, carried, and brandished a firearm, during and in relation to a crime of violence (the Mapco Robbery as charged in Count Three), in violation of 18 U.S.C. §§ 924(c) and 2. (Doc. No. 25 at 2). Evidence at trial showed that on the night of July 23, 2020, Defendant, Walker, and Williams entered the Mapco gas station on Old Fort Parkway, Murfreesboro, Tennessee, wearing masks. Walker and Williams approached the register purportedly to request a cigar, while Defendant stayed by the restroom as a lookout. Walker then pointed a gun at the clerk and demanded money and access to the safe. They took cash and tobacco products, returning to Williams' apartment to count the stolen money. Williams testified that the robbery was discussed in advance but firearms were not mentioned.[4] Walker testified that the robbery was premeditated, with plans for him to carry a gun, request cigarettes, and threaten the clerk, while Defendant and Williams were present and serving as lookouts.

> 3. <u>Count Seven (Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence—B.A. Carjacking)</u>

---

[4] Williams also testified that he knew (although in context his alleged knowledge clearly was the result of an assumption, whether warranted or unwarranted) that Defendant was armed because Defendant "always carried" a particular handgun he had purchased, a (Sig Sauer) P380 pistol. But Defendant's alleged carrying of a firearm that night is irrelevant to the instant Motion, because even if Defendant did possess a firearm that night, there is no evidence of anyone other than Walker brandishing a firearm that night—meaning that Defendant's criminal liability specifically for brandishing a firearm would have to be due to his aiding and abetting Walker in the brandishing (or at least in the using and carrying that ended up also involving brandishing).

Count Seven charged that on or about July 26, 2020, Defendant, Walker, and Williams used, carried, brandished, and discharged a firearm during and in relation to the carjacking of B.A., in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. (Doc. No. 25 at 3-4). Evidence showed that the three were walking in Murfreesboro, Tennessee, when they saw a Honda Accord entering an apartment complex. They approached the car, and Walker brandished a gun at the driver, B.A., ordering him out. B.A., frightened, climbed into the back seat, and Defendants got in. While in the backseat with B.A., Defendant took the firearm from Walker, brandished it at B.A., and threatened him about his bank account and possessions. Williams drove to a Bank of America ATM, where they forced B.A. to withdraw $1,000 from B.A.'s account. They continued driving around with B.A. in the vehicle, and at some point, Walker fired the gun out the window toward another vehicle. Later, Defendant moved from the backseat and drove the car while Walker used his cellular phone to record a video with the firearm. Eventually, they stopped, made B.A. exit on the side of the road, and threatened to kill him if he reported to the police. Defendants then drove off in B.A.'s car. B.A. was not physically harmed.

    4. <u>Count Twelve (Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence—C.M. carjacking)</u>

Count Twelve charged that on or about July 27, 2020, Defendant, Walker, and Williams knowingly used, carried, brandished, and discharged a firearm during and in relation to the carjacking of C.M. in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. (Doc. No. 25 at 5). At trial, evidence established that in the early hours of July 27, 2020, shortly after carjacking B.A. and perpetrating another attempted carjacking, Walker, Williams, and Defendant returned to Murfreesboro, Tennessee, in B.A.'s car. They spotted a white Ford F-150 driven by C.M. and followed it to a residence, where C.M. parked. Defendant, who was carrying a firearm, and Williams exited B.A.'s car and approached C.M.'s truck. Defendant got into the driver's seat and

handed the firearm to Williams, who joined C.M. in the backseat. Walker stayed in B.A.'s car and followed behind the F-150. Williams took C.M.'s phone and wallet and forced him to give directions to the interstate. Upon reaching the interstate, they forced C.M. out of the truck. As C.M. exited, Williams discharged the gun, hitting C.M. in the face and hand. Williams testified at trial that the discharge was accidental.

### III. The Jury Instructions

Prior to trial, the Government submitted proposed jury instructions for the Court's consideration, and Defendant generally agreed with the jury instructions proposed by the Government. (Doc. No. 138) ("[T]hese instructions (and the contemporaneously filed verdict forms) are submitted on behalf of both parties. The defense agrees to the proposed jury instructions, with the exception of the <u>underlined</u> sentences found on pages 21 and 30.").[5] Minor edits were made to the parties' proposed jury instructions, and a final draft of the jury instructions was distributed to the parties at a final charge conference during the trial. Neither the Government nor Defendant objected to the Court's jury charge at trial.[6]

Focusing on the jury instructions pertinent to Defendant's Motion, the jury was directed that to find Defendant guilty of the § 924(c) offenses, the Government was required to prove three elements beyond a reasonable doubt:[7]

1. That the defendant committed the underlying crime of violence, or aided and

---

[5] The sentences with which Defendant disagreed are not currently at issue.

[6] As discussed herein, after the jury was charged, the parties pointed to a typographical error in the jury instructions with respect to Count Twelve; but ultimately, both parties advised the Court they did not believe any edits were needed in the jury instructions prior to providing a final copy of the instructions to the jury.

[7] In addition to the elements, the Court also provided the jury detailed instructions on several terms, including the terms "use," "carrying," and "brandishing," "discharge," "firearm," "during and in relation to," and "knowingly."

abetted its commission;

2. that the defendant knowingly used or carried a firearm; and

3. that the use or carrying of the firearm was during and in relation to the underlying crime of violence.

Additionally, the Court advised the jury that Defendant did not have to personally commit the crime of using or carrying a firearm during and in relation to a crime of violence and could alternatively be found guilty as an aider and abettor if the Government proved the following elements beyond a reasonable doubt:[8]

1. That the crime of using or carrying a firearm during and in relation to a crime of violence was committed;

2. that the defendant helped to commit or encouraged someone else to commit the crime of using or carrying a firearm during and in relation to a crime of violence; and

3. that the defendant intended to help commit or encourage the crime of using or carrying a firearm during and in relation to a crime of violence.

The Court further explained that a defendant intends to aid and abet the § 924(c) offense when he has "advance knowledge that an accomplice would use or carry a firearm" during the crime of violence. The jury received further instructions from the Court as to "advance knowledge":

> Advance knowledge means knowledge at a time the defendant can attempt to alter the plan or withdraw from the enterprise. Knowledge of the firearm may, but does not have to, exist before the underlying crime is begun. It is sufficient if the defendant gained the knowledge in the midst of the underlying crime, as long as the defendant chose to continue to participate in the crime and had a realistic opportunity to withdraw. You may, but need not, infer that the defendant had

---

[8] The crux of Defendant's argument seems to be that these aiding and abetting instructions fail to comply with *Alleyne*, in that they fail to address the acts/elements of brandishing or discharge that are necessary to increase the mandatory minimum sentence.

sufficient foreknowledge if you find that the defendant chose to continue his participation in the crime after the defendant knew an accomplice was using or carrying a firearm.

(Doc. No. 138 at 23-24).

The Court also explained that if the jury found Defendant guilty of the § 924(c) offenses, it would be asked on the verdict form to decide whether the firearm was brandished (as to each count) and/or discharged (as to Counts Seven and Twelve) during the crime.[9] Neither the Government nor Defendant objected to the Court's jury charge at trial.[10]

### IV. The Jury Verdict

The jury ultimately returned a verdict of guilty on all counts. As to the § 924(c) counts, the jury made specific findings (reproduced immediately below) that the firearm was brandished in connection with Counts Two, Four, Seven, and Twelve, and that the firearm was discharged (as well as brandished) in connection with Counts Seven and Twelve:

---

[9] In *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the "brandish[ing]" of a firearm, which under § 924(c)(1)(A)(ii) increases the mandatory minimum term of imprisonment from five to seven years, is an "element" of the crime—i.e., the particular kind of violation of Section 924(c)(1)(A) that results in a seven-year rather than five-year mandatory minimum sentence —that must be submitted to the jury and proved beyond a reasonable doubt. Plainly, this likewise is true for the "discharg[ing]" of a firearm, which under § 924(c)(1)(A)(iii), increases the mandatory minimum term of imprisonment to ten years (rather than five years or seven years). The findings on the special verdict form were included to comply with *Alleyne*.

[10] As noted already in a footnote above and as discussed herein, after the jury was charged, the parties pointed to a typographical error in the jury instructions with respect to Count Twelve; but ultimately, both parties advised the Court they did not believe any edits were needed in the jury instructions prior to providing a final copy of the instructions to the jury.

## COUNT TWO

2. With respect to Count Two of the Indictment, which charges using and carrying a firearm during and in relation to a crime of violence, namely the robbery charged in Count One of the Indictment, we unanimously find the defendant:

   Guilty ___✓___        Not Guilty _____

*If you find the defendant guilty on Count Two, proceed to the question below.*

*If you find the defendant not guilty on Count Two, skip this question and proceed to Count Three.*

We, having found the defendant guilty on Count Two of the Indictment, further unanimously find as follows:

   That the firearm was brandished during and in relation to the crime of violence charged in Count One (check either yes or no):

   Yes ___✓___        No _____

## COUNT FOUR

4. With respect to Count Four of the Indictment, which charges using and carrying a firearm during and in relation to a crime of violence, namely the robbery charged in Count Three of the Indictment, we unanimously find the defendant:

   Guilty ___✓___     Not Guilty _____

*If you find the defendant guilty on Count Four, proceed to the question below.*

*If you find the defendant not guilty on Count Four, skip this question and proceed to Count Five.*

We, having found the defendant guilty on Count Four of the Indictment, further unanimously find as follows:

   That the firearm was brandished during and in relation to the crime of violence charged in Count Three (check either yes or no):

   Yes ___✓___     No _____

## COUNT SEVEN

7. With respect to Count Seven of the Indictment, which charges using and carrying a firearm during and in relation to a crime of violence, namely the carjacking charged in Count Five of the Indictment, we unanimously find the defendant:

   Guilty ___✓___     Not Guilty _____

*If you find the defendant guilty on Count Seven, proceed to the questions below.*

*If you find the defendant not guilty on Count Seven, skip these questions and proceed to Count Eight.*

We, having found the defendant guilty on Count Seven of the Indictment, further unanimously find as follows:

   That the firearm was brandished during and in relation to the crime of violence charged in Count Five (check either yes or no):

   Yes ___✓___     No _____

   That the firearm was discharged during and in relation to the crime of violence charged in Count Five (check either yes or no):

   Yes ___✓___     No _____

## COUNT TWELVE

12. With respect to Count Twelve of the Indictment, which charges using and carrying a firearm during and in relation to a crime of violence, namely the carjacking charged in Count Ten of the Indictment, we, the jury, unanimously find the defendant Joshua:

    Guilty ___✓___        Not Guilty _____

*If you find the defendant guilty on Count Twelve, proceed to the questions below.*

*If you find the defendant not guilty on Count Twelve, skip these questions and proceed to Count Thirteen.*

We, the jury, having found the defendant guilty on Count Twelve of the Indictment, further unanimously find as follows:

That the firearm was brandished during and in relation to the crime of violence charged in Count Ten (check either yes or no):

   Yes ___✓___        No _____

That the firearm was discharged during and in relation to the crime of violence charged in Count Ten (check either yes or no):

   Yes ___✓___        No _____

(Doc. No. 163). Notably, the verdict form required the jury, consistent with the Court's instructions, to make count-by-count findings as to whether the firearm was brandished and/or discharged (but not anything else related to any brandishing or discharge, including whether liability for brandishing or discharge was based on an aiding-and-abetting theory). Neither party objected to the use of the verdict form,

### V. The Parties' Respective Arguments

Via the Motion, Defendant challenges his convictions for using, carrying, and brandishing a firearm during and relation to a crime of violence in Counts Two, Four, Seven, and Twelve; and for using, carrying, brandishing, and discharging of a firearm in Counts Seven and Twelve. (Doc. No. 205 at 2). More specifically, he challenges these convictions to the extent that

they are convictions for brandishing or discharging rather than for merely carrying. According to Defendant, the Government's evidence failed to show that Defendant personally brandished or discharged the firearm during the robberies or carjackings; therefore, he could be convicted of the § 924(c) counts only as an aider or abettor. (Doc. No. 205 at 3, ¶¶ 7-9). To that end, Defendant suggests that the jury instructions on aiding and abetting liability were erroneous because they did not properly inform the jury on aiding and abetting liability with respect to the specific acts of brandishing or discharging the firearm. (Doc. No. 205 at 4).[11] Defendant likewise relies on the fact that "[t]he [v]erdict form does not have a choice for aiding and abetting or for aiding and abetting brandishing or discharge." (Doc. No. 205 at 2).

Defendant argues that given these instructions and the verdict form, the jury could find Defendant guilty only of aiding and abetting the *using or carrying* of firearms (which is consistent with Court's instructions as to the elements for aiding and abetting) with respect to Counts Two, Four, Seven, and Twelve (Doc. No. 205 at 1).[12]

In response, the Government argues that Defendant is not entitled to relief, because the Court's jury instructions were an accurate statement of the law as set forth in *Rosemond v. United States*, 572 U.S. 65, 77-78 (2014) and *United States v. Johnson*, 702 F. App'x 349, 357-359 (6th

---

[11] Defendant seemingly argues (albeit without specifically articulating) that all § 924(c) convictions based on aider and abettor liability require the element of mens rea associated with aiding and abetting—"advance knowledge"—"go to the specific and entire crime charged," pursuant to *Rosemond*. Put another way, the idea is that the Government must have proved beyond a reasonable doubt that Defendant had advance knowledge of the brandishing or discharging of the firearm (as opposed to the using or carrying), because it is those elements that increase the mandatory minimum sentence. *See Rosemond,* 572 U.S. at 76.

[12] Defendant does not challenge (at least, not in the instant Motion) his convictions for *using or carrying* a firearm during and in relation to a crime of violence (or and abetting the same). Moreover, he does not dispute (with respect to Counts, Two, Four, Seven and Twelve) that the firearm was brandished or (with respect to Counts Seven and Twelve) that the firearm was discharged. (*See* Doc. No. 214 at 7, fn. 2). Instead, he challenges his criminal liability (manifested as an increase in the otherwise applicable mandatory minimum prison term) associated with the brandishing and discharging, on the grounds that any such brandishing and discharging was done solely by one or both of his co-Defendants and not by him.

Cir. 2017). According to the Government, it was not required to prove Defendant had advance knowledge that a firearm would be brandished or discharged during or in relation to the robberies or carjackings, pursuant to *Rosemond*. Instead, the Government contends Defendant is liable as an aider and abettor for any violation of § 924(c)(1)(A)—whether for using or carrying in violation of § 924(c)(1)(A)(i), for brandishing in violation of § 924(c)(1)(A)(ii), or for discharging in violation of § 924(c)(1)(A)(iii)—so long as it was proved that Defendant had advance knowledge that an accomplice would *carry or use* a firearm during the robberies and carjackings. The Government claims it has met that burden.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29(c) permits a district court to enter a judgment of acquittal after a jury has returned a guilty verdict. Fed. R. Crim. P. 29(c). "The test for denial of a judgment of acquittal pursuant to Fed. R. Crim. P. 29 of the Federal Rules of Criminal Procedure is the same" as the test for reviewing a claim that the evidence is insufficient to support a conviction. *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989). The Court must decide "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In deciding a motion for judgment of acquittal, the Court may not make its own determinations with respect to the credibility of witnesses or the weight to be given to such evidence. *United States v. Levy*, 904 F.2d 1026, 1032 (6th Cir. 1990). The government must receive the benefit of all inferences which can reasonably be drawn from the evidence. *Glasser v. United States*, 315 U.S. 60, 80 (1942). Under the Rule 29 standard, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable

hypothesis except that of guilt." *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994) (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986)); *see also United States v. Prieur*, 429 F.2d 1237, 1238 (6th Cir. 1970). Even the "uncorroborated testimony of a single accomplice may support a conviction under federal law." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985). Accordingly, a defendant seeking acquittal under Rule 29 bears a "very heavy" burden. *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005).

## ANALYSIS

### I. Jury Instructions

As a threshold matter, the Court notes that Defendant's arguments center around (brand new) complaints about the jury instructions and the content of the jury verdict form. And to be clear, Defendant's remarks about the jury instructions and verdict form are not mere commentary, but rather amount to complaints, which is to say, objections. Specifically, the upshot of Defendant's remarks is that: (a) the jury instructions were erroneous in that they contemplated Defendant being held liable for *brandishing and/or discharging* a firearm (as opposed to merely *using or carrying* a firearm) on an aiding-and-abetting theory, without containing the supposedly necessary instruction that such liability required the jury to find (beyond a reasonable doubt) that Defendant aided and abetted the brandishing and/or discharging (and not just the using or carrying) in particular; and, likewise, (b) the verdict form was erroneous in that it contemplated Defendant being held liable for *brandishing and/or discharging* a firearm (as opposed to merely using or carrying a firearm) on an aiding-and-abetting theory, without requiring the supposedly necessary finding (beyond a reasonable doubt) that Defendant aided and abetted the brandishing and/or discharging (and not just the using or carrying) in particular.

But these arguments are not directly related to a Rule 29 challenge to the sufficiency of the evidence. For this reason, the Court declines to grant relief based on the alleged problems with the jury instructions under the authority of Rule 29, which (appropriately) is the only authority invoked by Defendant on the instant Motion.

The Court will, however, address alternatively whether it would have granted relief at this juncture based on any alleged errors in the jury instructions. The proper time to object to jury instructions or to a failure to give a requested instruction is prior to jury deliberation. *See* Fed. R. Crim. P. 30(d) ("Failure to object [to jury instructions] in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."). Here, Defendant did not object to the Court's jury instruction. After the jury was charged, the Court again inquired as to whether there were objections from the parties as to the jury charge. Other than the Government calling to the Court's attention a typographical error in the jury instructions with respect to Count Twelve—which both parties declined to have the Court call to the jury's attention—the parties advised the Court that they did not have any objections to the instructions and did not believe any edits were needed in the written version of the jury instruction prior to it being provided to the jury. In short, Defendant failed to timely object to the jury instructions, and so the Court would have declined in any event to grant relief to Defendant based on alleged errors in the jury instructions.

Even so, the Court will address whether, had a timely objection been made to the jury instructions, it would have granted relief at this juncture based on any alleged errors in the jury instructions. The Court will forgo detailed analysis as to what all might be required for Defendant to obtain relief at this juncture on this basis under whatever the applicable standard happens to be—a standard that Defendant does not identify. Suffice it to say that the Court does not see why

it would grant relief on this basis unless it was convinced that the jury instructions were clearly incorrect.

The Court is sympathetic to Defendant's arguments for reasons (stemming from the undersigned's view of the true implications of *Apprendi v. New Jersey*, 530 U.S. 466 (2000)), the Court need not discuss fully herein. But the Court's jury instructions here (in terms of both what the jury was instructed and what the jury was *not* instructed) are not clearly wrong, given the holding in *United States v. Johnson*, 702 F. App'x 349, 358-59 (6th Cir. 2017). In *Johnson*, in addressing first a sufficiency-of-the-evidence challenge and then a jury-instruction challenge to the defendant's conviction under Section 924(c)(1)(A)(ii), the Sixth Circuit addressed whether the "advance knowledge" required for (enhanced) aiding-and-abetting liability under § 924(c)(1)(A)(ii) includes advance knowledge of *how* the firearm would be used (*i.e.* "brandishing")—an issue not squarely addressed in *Rosemond*. Ultimately, the court in *Johnson* held, based on the following quoted language from *Rosemond*, that the "[G]overnment was not required to prove that Defendant had advance knowledge that [an accomplice] would *brandish* a gun as opposed to use it in some other way":

> In Rosemond, the Supreme Court explained the *mens rea* necessary to satisfy § 924(c)'s intent requirement as follows:
>
>> ... An active participant in a [crime of violence] has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one. In so doing, he has chosen ... to align himself with the illegal scheme in its entirety—including its use of a firearm. And he has determined ... to do what he can to "make [that scheme] succeed." [*Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S. Ct. 766, 93 L.Ed. 919 (1949) ]. He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others. *He may not have brought the gun to the [crime] himself, but because he took part in that deal knowing a confederate would*

> *do so, he intended the commission of a § 924(c) offense—i.e., an armed [crime].*

*Johnson*, 702 F. App'x at 358-59 (quoting *Rosemond,* 572 U.S. at 77-78 (emphasis added)) (brackets in original). In *Johnson*, the Sixth Circuit went on to say, "As this reasoning makes clear, the government was not required to prove that Defendant had advance knowledge that [an accomplice] would *brandish* a gun as opposed to use it in some other way." *Johnson*, 702 F. App'x at 359.

The undersigned is dubious that the quoted reasoning from *Rosemond* in fact makes clear what *Johnson* says it makes clear: that a conviction under Section 924(c)(1)(A)(ii) under an aiding-and-abetting theory does not require advance knowledge of the brandishing. First, it ignores other important propositions set forth in *Rosemond,* including the following:

> [A] person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission. *An intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, the intent must go to the specific and entire crime charged—so here, to the full scope (predicate crime plus gun use) of § 924(c).* And the canonical formulation of that needed state of mind—later appropriated by this Court and oft-quoted in both parties' briefs— is Judge Learned Hand's: To aid and abet a crime, a defendant must not just in some sort associate himself with the venture, but also participate in it as in something that he wishes to bring about and seek by his action to make it succeed*.…[A] § 924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice.*

*Rosemond*, 572 U.S. at 76, 78 (quotations and citations omitted) (emphasis added). So, *Rosemond* says that intent (meaning, in the present case, the mens rea of advance knowledge rather than "intent" as such) must go to the specific and entire crime charged. And in the view of the undersigned (which the Court need not elucidate herein), *Apprendi* and its progeny (especially *Alleyne*) teach that where a violation of a statute involves a higher mandatory minimum penalty under certain circumstances, then a violation of the statute that involves those circumstances is a crime *different* from a violation of the crime that does not involve those circumstances (and thus

does not involve the higher mandatory minimum). This would mean that violations of Section 924(c)(1)(A)(ii) and (iii)—with their mandatory minimum prison terms that are higher than those in Section 924(c)(1)(A)(i)—are crimes different from violations of Section 924(c)(1)(A)(i). It follows that to find a defendant guilty as to those particular crimes, the jury would need to find beyond a reasonable doubt all circumstances defining that crime—including "brandishing" in the case of Section 924(c)(1)(A)(ii) and "discharging" in the case of Section 924(c)(1)(A)(iii). And in the present case, no such finding could be made except under an aiding-and-abetting theory, which would require Defendant's advance knowledge of the brandishing and/or discharging (and not merely the using or carrying)—something that should have been reflected in both the jury instructions and the verdict form.

The undersigned sees the validity of this line of reasoning. Indeed, the Government seemed to embrace it, even if only in an abundance of caution, in *Johnson*.[13] But such reasoning runs directly counter to the firm and unambiguous holding of *Johnson,* which is that convictions under Section 924(c)(1)(A)—even those dictating, pursuant to Section 924(c)(1)(A)(ii) or (iii), mandatory minimum sentences higher than those for mere carrying or using—based on an aiding-and-abetting theory require advance knowledge *only* of the using and carrying. Thus, even though

---

[13] It appears that the district court in *Johnson* instructed the jury, *at the government's invitation*, that conviction under Section 924(c)(1)(A)(ii) required advance knowledge of the brandishing, as opposed to only advance knowledge of use or carrying. *See Johnson Brief for Appellee*, No. 16-2063, 2017 WL 1372546, at *52 n. 4. The verdict form likewise made this clear. *See id.* On appeal in *Johnson*, the defendant raised both a sufficiency of the evidence and jury-instruction challenge based on *Alleyne* and *Rosemond*. Notably, the jury-instruction challenge was not truly based on the failure to instruct that advance notice was required as to brandishing, but rather was instead based on a supposedly misleading reference in the instruction to "crimes of violence" rather than "armed bank robberies." *See id.* at *56; *Johnson*, 702 F. App'x at 360. The Government conceded in their appellee's brief that the "conservatively composed instruction was prudent considering the novelty of *Rosemond* and the [evidence at trial] that undoubtedly satisfied the standard." *See Johnson Government's Brief*, 2017 WL 1372546, at *52 n. 4. The Government's description of this post-*Rosemond* instruction as "prudent" gives credence to this particular argument and tends to show that *Rosemond* can be taken to support the exact opposite view of the view that *Johnson* claims *Rosemond* supports.

*Johnson* is non-precedential (because it is unpublished), it cannot be said that the jury instructions and verdict forms in this case, which comport with *Johnson*, are clearly erroneous. So relief at this juncture based on such alleged error would be unwarranted in any event.

## II. Sufficiency of the Evidence

Absent objections to the jury instructions and verdict form, the Court must look at the sufficiency of the evidence to support the challenged convictions based on how the jury was instructed.

The Motion discusses very little of the evidence presented at trial bearing on the § 924(c) counts (and on whether Defendant should be held liable on such counts specifically under an aiding-and-abetting theory), and certainly fails to discuss such evidence in a light most favorable to the Government.[14] It does not help that the motion is unaccompanied by a supporting brief and contains no citation to any legal authority other than *Alleyne*. Ultimately, despite the Court's appreciation for learned counsel's service as appointed counsel, their argument is too skeletal for the Court to find that Defendant has met his heavy burden to obtain a judgment of acquittal under Rule 29. *See, e.g., United States v. Fechete*, No. 06 CR 923-1, 2008 WL 4200286, at *2 (N.D. Ill. Sept. 10, 2008)( "[the defendant's] asserted grounds are completely conclusory and set forth no explanation or citation to the record whatsoever and, in virtually every instance, no citation to any legal authority. Defendant's conclusory allegations are insufficient to meet the "very high burden" required for a judgment of acquittal under Rule 29."); *United States v. Thompkins*, No. S3 04CR.645 (LTS), 2007 WL 1161234, at *2 (S.D.N.Y. Apr. 18, 2007) ("Defendant's arguments are

---

[14] On the other hand, the Government has provided an exhaustive enumeration of trial evidence related to the § 924(c) counts in a detailed, count-specific manner. This rendition of the presented evidence appears to be unchallenged by the Defendant, evidenced by his lack of reply to the Government's Response. Furthermore, the Government's account of the trial evidence aligns with the undersigned's recollection of the trial proceedings.

conclusory and speculative, do not discuss any pertinent facts of the case or refer to and/or dispute any of the evidence presented at trial, and thus do not satisfy Defendant's heavy burden of demonstrating that a Rule 29 judgment of acquittal is appropriate in this case."); *United States v. Ortiz*, No. CRIM.A. 92-0592, 1993 WL 303286, at *3 (E.D. Pa. Aug. 5, 1993) ("In his motion papers, defendant does not explain why the evidence was insufficient and I will deny his motion for judgment of acquittal[.]"), *aff'd*, 27 F.3d 560 (3d Cir. 1994); c*f. United States v. Orrego-Martinez*, 575 F.3d 1, 8 (1st Cir. 2009) ("[D]efendant in his brief refers in skeletal fashion to a trio of other Rule 29 contentions. Each of these assignments of error can be deemed waived for lack of sustained argument.").

## CONCLUSION

For the reasons stated, Defendant's motion is DENIED.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE